**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1129-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

COREY R. TURNER, a/k/a
MECCA, CORE-MEGA MECCA,
TURNER RICHARD, CORYE R.
TURNER, COREY BOWENS,
and CORY TURNER,

    Defendant-Appellant.

_____

Argued telephonically May 18, 2020 –
Decided July 9, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-06-0432.

Elana Rose Beale, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Stanton Perrone, First Assistant Deputy Public Defender, of counsel; Moses Silverman, Luke X. Flynn-Fitzsimmons, Bolutito

Adewunmi and Edgar Aliferov, Designated Counsel, on the briefs).

Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).

PER CURIAM

Defendant Corey R. Turner was indicted for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of a controlled dangerous substance—heroin in a quantity of less than one-half ounce—with intent to distribute or distribution, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (counts two and three); third-degree possession of a controlled dangerous substance with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (counts four and five); and second-degree possession of a controlled dangerous substance with intent to distribute within 500 feet of a public housing facility, public park, or public building, N.J.S.A. 2C:35-7.1 (counts six and seven). After his motion to suppress heroin and cash seized from his person following his arrest was denied, defendant pleaded guilty to count four of the indictment, specifically reserving his right to appeal the motion judge's order. He appeals from that conviction, arguing:

[POINT I]

[DEFENDANT'S] MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE STATE HAS NOT MET ITS BURDEN OF SHOWING THAT [DEFENDANT] WAS SEARCHED PURSUANT TO A LAWFUL ARREST.

    A.    A Lawful Arrest Requires Probable Cause that an Offense Has Been or Is Being Committed.

    B.    There Was No Probable Cause that [Defendant] Sold CDS; Rather, There Was at Most a Reasonable Suspicion of Illegal Activity, Which Would Have Permitted Further Investigation of [Defendant], But Not His Arrest.

    C.    Case Law Establishes that Probable Cause Was Missing.

    D.    The Court Should Suppress Evidence Recovered During the Search of [Defendant] Incident to His Unlawful Arrest.

Unpersuaded, we affirm.

In an oral decision, the motion judge made findings of fact based on the evidence adduced during the suppression hearing at which he heard testimony from a defense investigator and a Jersey City police officer who was a five-year veteran assigned for the last year of that tenure to the City Wide Unit, a plain-

3

clothes unit that responded to and investigated CDS transactions, disorderly groups, shootings and like matters.

We defer to the trial court's factual findings on a motion to suppress, "unless they were 'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Because the motion judge observed the character and demeanor of the witnesses at the suppression hearing, he was in a better position to determine credibility. State v. Locurto, 157 N.J. 463, 474 (1999). However, we exercise plenary review of the court's application of the law to the facts on a motion to suppress. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

Inasmuch as police searched defendant without a warrant, it was incumbent upon the State to prove the search was valid under an exception to the warrant requirement. See State v. Moore, 181 N.J. 40, 44-45 (2004). The State advances the search of defendant was valid as incident to his lawful arrest. A search incident to arrest does not require a warrant, so long as probable cause existed for the arrest. State v. Gibson, 218 N.J. 277, 293 (2014).

"Probable cause exists if at the time of the police action there is 'a "well[-]grounded suspicion" that a crime has been or is being committed.'" State v.

Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). "[P]robable cause is more than a mere suspicion of guilt, [but] less than the evidence necessary to convict a defendant of a crime in a court of law." State v. Basil, 202 N.J. 570, 585 (2010). "In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances, and view those circumstances 'from the standpoint of an objectively reasonable police officer.'" Ibid. (citations omitted) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). Some of the circumstances to be considered in the totality

> include a police officer's "common and specialized experience," [Schneider v. Simonini, 163 N.J. 336, 362 (2000)], and evidence concerning the high-crime reputation of an area, State v. Johnson, 171 N.J. 192, 217 (2002). Although several factors considered in isolation may not be enough, cumulatively these pieces of information may "become sufficient to demonstrate probable cause." State v. Zutic, 155 N.J. 103, 113 (1998).
>
> [Moore, 181 N.J. at 46.]

Under that lens we agree with the motion judge that the State established probable cause that defendant distributed CDS.

From testimony the motion judge deemed credible, we discern on March 17, 2017 the officer set up surveillance at a liquor store named by an anonymous tipster as the location where a black male wearing dark pants and a black and

white jacket was distributing CDS.  The liquor store was located in a high-crime area where the illegal activities included CDS crimes.  Approximately twenty or thirty minutes after setting up surveillance, the officer observed a black male wearing dark pants and a black and white jacket—later identified as defendant—approach the liquor store.  The officer entered the liquor store ahead of defendant.  Moments later, defendant walked in the store with another man later identified as Jackie Castleberry.

From no more than ten feet away, the officer observed defendant take a small, white, shiny object from his waistband or jacket and hand it to Castleberry.  Castleberry placed the object in his right jacket pocket.  Both men left without making a store purchase and walked in different directions.

The officer testified that he believed the object transferred by defendant was heroin because of the attendant circumstances, including "[t]he information [the police] had received and pretty much from [his] training and experience and being that there was no actual business done."  "[D]efendant and [Castleberry,] [did] no actual business within the liquor store other than what they had going on [between them]."  As such he notified perimeter units to stop Castleberry.

Over defendant's interposed hearsay objection to what the officer was told by the perimeter unit, the motion judge limited the officer's testimony to "a

summary of what was reported to him" by the perimeter unit, reserving the discretion to assign what weight to the hearsay testimony the judge deemed appropriate. The officer related that Castleberry, when approached by the officers "reached into his right jacket pocket and pretty much put the white small object in his mouth." Although one officer tried to prevent Castleberry from swallowing the object, Castleberry ingested it.

Perimeter units were unable to locate defendant so the officer maintained his surveillance point for approximately forty minutes before he saw defendant return to the liquor store where he was arrested. Forty-nine glassine bags and twenty dollars was recovered from defendant's person. The officer described the quantity of heroin as a brick—a bundle usually containing fifty glassine bags—less one.

Initially, the motion judge did not err by considering the hearsay testimony about Castleberry's actions. In State v. Bynum, 259 N.J. Super. 417, 420-21 (App. Div. 1992) we recognized evidentiary rules, save for exclusion of relevant evidence under N.J.R.E. 403[1] and valid claims of privilege, do not apply

---

[1] N.J.R.E. 403 provides: "Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence."

to pretrial evidentiary hearings.  See also State v. Gibson, 429 N.J. Super. 456, 466 (App. Div. 2013) ("[T]he suppression hearing may include evidence inadmissible in the trial on the merits. . . . The Rules of Evidence do not apply in the suppression hearing, except as to N.J.R.E. 403 and claims of privilege." (citing N.J.R.E. 104(a))), rev'd on other grounds, 219 N.J. 227 (2014).  The judge did not exercise his discretion to exclude the evidence as unreliable.  See Bynum, 259 N.J. Super. at 420-21.  We see no reason to disturb the exercise of that discretion.  See State v. Perry, 225 N.J. 222, 233 (2016).

In State v. Smith, the police received an anonymous phone call and a tip from a reliable informant that drugs were being dispensed from a particular location.  129 N.J. Super. 430, 432-34 (App. Div. 1974).  Although the police did not witness any drug transaction, we found that the "[d]efendant's known narcotics record; his recent presence in areas being investigated for narcotics activity; his presence at [the specific address indicated by the two sources] for a period just long enough to make a narcotics purchase and his furtive glances after exiting under the circumstances" gave the police probable cause to search him.  Id. at 434.  We noted that although none of these factors alone would have provided the police with probable cause, the combination of factors justified the search of the defendant.  Ibid.  Likewise, here, the discrete circumstances do not

establish probable cause. It is established, however, by the totality of the evidence.

Anonymous tips alone are generally insufficient to establish a reasonable suspicion, much less probable cause. See State v. Golotta, 178 N.J. 205, 228 (2003). Two important factors for consideration in the totality of the circumstances analysis to determine if there was a substantial basis to credit an informant's tip are the informant's veracity and the informant's basis of knowledge for the information supplied. State v. Smith, 155 N.J. 83, 93 (1998) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). If inadequately demonstrated by the information provided by the informant, as here, either the veracity prong or basis of knowledge prong can be bolstered by a corroborative investigation which lends them independent weight. Id. at 98; see Sullivan, 169 N.J. at 213-14. The tip merely established that the described male was dealing CDS from the liquor store.

Corroboration of the alleged criminal activity added to the establishment of probable cause, for "without the corroboration of suspicious detail there can be no inference that defendant was engaged in criminal activity." Zutic, 155 N.J. at 112. Defendant matched the meager description given by the tipster.

Obviously he also approached and later entered the exact liquor store described in the tip with the man to whom he ultimately transferred the suspected CDS.

While we agree with defendant's present contention that the officer never testified that the object transferred was, as the motion judge found, "consistent with the size and shape of CDS heroin," and that the officer never specified the any training he received, particularly in the packaging and identification of CDS, he did describe a small, white, shiny object. He observed defendant remove that object from his jacket or waistband, and transfer it to Castleberry who immediately put it in his right jacket pocket before the pair exited the store. Based on his five years of experience as an officer, including one year in the City Wide Unit which dealt with CDS transactions, if not his unspecified training, he believed he witnessed a CDS distribution, albeit without any observed exchange of money.

Certainly, the item transferred was not as benign as a cigarette pack. See State v. Piniero, 181 N.J. 13, 28 (2004) (holding an officer's observation of the transfer of a cigarette pack absent an exchange of money, was insufficient to establish probable cause notwithstanding the officer's "conclusory testimony that he knew that cigarette packs are used to transport drugs because he had seen that type of activity before"). The brevity of the transaction, the nature of the

item transferred, the immediate pocketing of the item by Castleberry and, as the motion judge found, "the fact that neither man purchased anything while inside the store" supported the officer's deduction that he witnessed a CDS transaction. See Moore, 181 N.J. at 43, 46-47 (2004) (concluding officer's observation of defendant briefly meeting with an individual, exchanging currency, and immediately pocketing a small unknown object supported the officer's determination that a drug transaction occurred); see also Johnson, 171 N.J. at 217 (recognizing an attempt to conceal an object is a factor in probable cause determination).

The incriminatory nature of the object was confirmed when Castleberry swallowed it when approached by police officers. Castleberry retrieved the item from the same pocket in which he had, just a short time before, placed the small, white, shiny object defendant gave to him. He succeeded in preventing the arresting officer from retrieving the object from his mouth. Even attempts by suspects to conceal CDS in their mouths when police approached have been held key factors in establishing probable cause.

In State v. Sheffield, when police officer in an unmarked car approached the defendant, "a known narcotics' pusher and dealer," he did not respond and walked quickly away from the police car. 62 N.J. 441, 444 (1973). The officer

exited the car and called defendant by name as he followed him. The officer then observed defendant put his hand to his mouth. Ibid. A struggle ensued when the officer apprehended the defendant during which CDS fell from defendant's mouth. Ibid. The Court found that after seeing the defendant "[make] a gesture to his mouth[,] the officer had probable cause to suspect criminal activity on defendant's part." Id. at 445; see also State v. Harris, 384 N.J. Super. 29, 48 (App. Div. 2006) (noting the defendant concealed evidence of illegal drug activity in his mouth in an attempt to avoid detection by investigating officers).

Castleberry's actions were inconsistent with possession of an innocuous item. His actions, the description of the item he consumed as a white small object, and the location of the object in the same jacket pocket linked the item to given to Castleberry by defendant and established probable cause to believe it was CDS. Added to the probable cause amalgam is the nature of the neighborhood in which the transfer took place and defendant's return to the store a short time after the transfer.

Notwithstanding the lacunas in the State's proofs caused by its failure to elicit the officer's training and relating same to the size, shape and color of the object he saw transferred, and the fact that the officer did not witness the

exchange of cash for the object, the totality of circumstances established probable cause to believe defendant distributed heroin to Castleberry, justifying the seizure as incident to his lawful arrest. We discern no error in the court's decision to deny defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1129-18T4