**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5417-18

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DONTE CRUMIDY,

    Defendant-Respondent.

_____

Argued April 22, 2020 – Decided April 16, 2021

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-01-0011.

Patrick F. Galdieri, II, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

Margaret McLane, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Margaret McLane, of counsel and on the brief).

The decision of the court was delivered by

FUENTES, P.J.A.D.

On April 3, 2014, a Middlesex County grand jury returned Indictment 14-04-0383 charging defendant Donte Crumidy and codefendants Rickey Barley and Juan Dunlap with second degree conspiracy to commit armed robbery and/or burglary, N.J.S.A. 2C:5-2 (count one); two counts of first degree armed robbery, N.J.S.A. 2C:15-1a(2) (counts two and three); two counts of second degree burglary, N.J.S.A. 2C:18-2 (counts four and five); two counts of second degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b (counts six and seven); and two counts of second degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4a (counts nine and ten).[1]

On May 24, 2016, the trial judge severed defendant's case from that of his two codefendants and tried him separately based on the strong likelihood that defendant's obstreperous behavior would undermine codefendants' right to a fair trial. Defendant's trial began on November 30, 2017 and spanned over a period of seven days. On December 14, 2017, the jury returned a partial verdict in

---

[1] The grand jury also returned Indictment 14-04-0385, which separately charged defendant with one count of second degree possession of a firearm by person previously convicted of one or more of the offenses listed in N.J.S.A. 2C:39-7(b). However, because the State ultimately dismissed this charge, the disposition of this indictment is not part of this appeal.

A-5417-18

which it found defendant not guilty on counts six and seven, second degree unlawful possession of two different handguns, and counts nine and ten, second degree possession of these two handguns for an unlawful purpose. The foreperson also reported to the judge that the jury "could not reach consensus" as to counts one, two, three, four, and five. In response to the judge's inquiry, both the prosecutor and defense counsel declined to poll the jurors pursuant to Rule 1:8-10.

After discharging the jury, the judge addressed the attorneys as follows:

> THE COURT: All right. So, let me ask you this question. The . . . verdict on the weapons charge nullifies the certain persons Indictment; right? I would think so.[2] Because they didn't even find him in either

---

[2] Although not raised here, we are compelled to point out that an acquittal of unlawful possession of a handgun in one trial does not vitiate the need to conduct a separate trial before the same jury on the charge of possession of the same firearm under N.J.S.A. 2C:39-7. As this court made clear in State v. Lopez:

> A certain persons trial is not simply the continuation of the unlawful possession trial. The proceedings are two separate trials which may, but need not, be conducted before different juries. [State v. Ragland, 105 189,194-96 (1986)]. The second trial is a ""new" trial[;] the defendant is entitled to the presumption of innocence and, as a consequence of that, to an instruction that each and every material fact that makes up the crime, including obviously the fact of possession, must be proven by the State beyond a reasonable doubt.'"

sole or joint or constructive possession of a weapon. [H]ere's what I need to do. I want you to think about it and I want you to come back in January -- how about you come back January 22nd, [2018] so we can conference this case.

I want to know how you guys want to proceed and then we'll set another date in the future, because we're going to have to release Mr. Crumidy to his State sentence. The State's been looking to pick him up, and we're going to have to bring him back at some point. We'll have a conference only on the 22nd with the attorneys.

And, what I need [the prosecutor] to do is let me know if this verdict requires you to dismiss that certain persons charge, number one. And number two, how do you want to proceed on . . . the conspiracy, the robbery and the burglary charge.

PROSECUTOR: Those I would like to retry.

. . . .

THE COURT: Now, also be prepared to discuss with me whether it's just a second degree robbery and a third degree burglary, or whether you think you have the ability to charge armed robbery and armed burglary, given that [the jury] rendered a verdict saying essentially that Mr. Crumidy had nothing to do with the guns.

[417 N.J. Super. 34, 40 (App. Div. 2010) (quoting State v. Wray, 336 N.J. Super. 205, 212 (App. Div. 2001) (quoting Ragland, 105 N.J. at 195)).]

On December 20 and 27, 2018, the State presented evidence to another Middlesex County grand jury, related only to the charges on which the petit jury was unable to reach a unanimous verdict. On January 3, 2019, the grand jury returned Indictment No. 19-01-0011, charging defendant with: second degree conspiracy to commit armed robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2 (count one); second degree conspiracy to commit armed burglary, N.J.S.A. 2C:18-2 and N.J.S.A. 2C:5-2 (count two); six counts of first degree armed robbery as an accomplice, N.J.S.A. 2C:15-1a(2) and N.J.S.A. 2C:2-6; and two counts of second degree burglary as an accomplice, N.J.S.A. 2C:18-2a(1) and b(2) and N.J.S.A. 2C:2-6.

On May 10, 2019, defendant moved to dismiss this indictment. After considering the written submissions and oral argument from counsel, the judge granted defendant's motion and dismissed the indictment as a matter of law on June 10, 2019. The judge held that the jury's acquittal in the first trial of all the charges related to possession of the firearms "insulated [defendant] from any kind of possession of those weapons." Although the charges in Indictment 19-01-0011 were predicated under the doctrine of accomplice liability as codified in N.J.S.A. 2C:2-6, the judge held:

> Nothing related to [a] weapon would be allowed in the subsequent trial based on the jury's verdict. Because,

5

again, they indicated that Mr. Crumidy has nothing to do either actually or constructively or jointly with the weapons alleged.

Accordingly, since every count of your indictment is premised on a weapons charge or some kind of possession of a weapon, that would fly in the face of the jury's verdict. Clearly fly in the face of [the] jury's verdict. So I'm going to have to dismiss this indictment in its entirety.

In this appeal, the State argues the judge erred when he granted defendant's motion to dismiss the indictment as a violation of the Double Jeopardy Clause of the Fifth Amendment, U.S. Const. amend. V, and Article I, Paragraph 11 of the New Jersey Constitution, N.J. Const. art. I, ¶ 11, or under the equitable doctrine of collateral estoppel. After reviewing the record developed before the trial court and mindful of prevailing legal standards, we agree with the State's position and reverse.

The partial verdict returned by the jury in the first trial acquitted defendant of charges related only to unlawful use and possession of handguns. The jury did not reach a unanimous verdict on the remaining counts in the original indictment. The charges in Indictment 19-01-0011 relate to offenses predicated on the doctrine of accomplice liability, first degree robbery, and second degree burglary, substantive offenses not covered by the first jury's partial verdict. The

6

State is therefore not barred from prosecuting defendant on these charges by our federal or State constitutions, nor the doctrine of collateral estoppel.

## I.

The evidence the State presented to the grand jury came predominantly from the testimony of New Brunswick Police Department Officer Jeffrey Monticello. At approximately 7:30 p.m. on January 3, 2014, Monticello and his partner Officer Adorno responded to the scene of a home invasion and robbery that occurred in a basement apartment located on Louis Street. This apartment was the home of Antonia,[3] her twin children Ellie and Roberto, and her then three-year-old grandson Julius. They were all present at the time the three assailants forced their way into the apartment.

Ellie made the 911 call to the police. She described the man with the pistol as approximately six feet tall. The other two assailants were between five feet, eight inches to five feet, ten inches tall. One of them had a bookbag and demanded her cellphone. Ellie told the officers that although one man had a bookbag, none of them were able to take anything from the apartment.

---

[3] We use first names to protect the privacy of these individuals. We do not intend any disrespect.

All three men ran away on foot down Louis Street in the direction of Somerset Street. Monticello told the members of the grand jury that he noticed a Hyundai Accent parked on Somerset Street about "half a city block" from the Louis Street home. The car was occupied by three men subsequently identified as Dunlap, Barley, and defendant. Dunlap was in the driver's seat. Monticello testified that he and Officer Adorno approached the vehicle and asked the occupants to step out of the car, When Dunlap exited the vehicle, a silver revolver fell from his waistband to the ground. The officers arrested all three men. It was later determined that the height of all three men matched Ellie's description.

On these facts, the grand jury returned Indictment No. 19-01-0011 against defendant.

## II.

We start our analysis by citing State v. Bell, a case in which our Supreme Court recently reaffirmed the principles governing grand jury proceedings, the role they play in our criminal justice system, and the procedures governing its function.

> Grand juries stand between citizens and the State, and are tasked with assessing whether there is [an] adequate basis for bringing a criminal charge. They serve the dual function of determining if there is probable cause

8

to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions. The grand jury is a judicial, investigative body, serving a judicial function; it is an arm of the court, not a law enforcement agency or an alter ego of the prosecutor's office.

Procedurally, the grand jury does not conduct a mini-trial, but an ex parte inquest . . . .

. . . .

To perform that function, grand juries are invested with broad and unfettered investigative powers that are largely unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. Further, a grand jury must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.

Despite the grand jury's investigative independence, grand jury proceedings are largely controlled by prosecutors. And, although the grand jury determines whether there is probable cause, the decision to prosecute and what charge to file or bring before a grand jury, generally rests entirely in the prosecutor's discretion.

[241 N.J. 552, 559-60 (2020) (internal citations omitted).]

As an appellate court, we generally review "a trial court's decision to dismiss an indictment under the deferential abuse of discretion standard." State v. Twiggs, 233 N.J. 513, 532 (2018). However, when the trial court's decision is predicated on a question of law, as it is here, our review is de novo. State v.

S.B., 230 N.J. 62, 67 (2017). Defense counsel argues that the State cannot prosecute defendant on the charges reflected in Indictment 19-01-0011 because the jury acquitted defendant of the four charges that required "possession" of a handgun.

> Criminal possession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time, accompanied by knowledge of its character. Such possession can be constructive rather than actual. Physical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists.
>
> [State v. Stewart, 96 N.J. 596, 603 (1984), (internal citations omitted).]

Defendant argues all of the offenses in Indictment 19-01-0011 implicitly requires the State to prove defendant had actual or constructive possession of a firearm during the commission of a first degree robbery and a second degree burglary.

The protections provided by the Fifth Amendment of the federal constitution's Double Jeopardy Clause run "coextensive" with the double jeopardy protections afforded by the New Jersey Constitution. State v. Miles, 229 N.J. 83, 92 (2017). Within this spectrum of protections are the prohibitions of prosecuting "a defendant for the same offense after an acquittal and . . .

10

prosecuting a defendant for the same offense after a conviction." State v. Schubert, 212 N.J. 295, 304 (2012). The Fifth Amendment also prohibits "imposing on a defendant 'multiple punishments for the same offense.'" Id. at 304-305 (quoting Jones v. Thomas, 491 U.S. 376, 381 (1989)).

The equitable doctrine of collateral estoppel "is embodied within the Double Jeopardy Clause . . . when an issue of ultimate fact has once been determined by a valid final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." State v. Brown, 394 N.J. Super. 492, 501 (App. Div. 2007) (citing Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Collateral estoppel "proceeds on the theory that once a jury makes a finding of ultimate fact, in a fully and fairly tried case, that finding should not be subject to relitigation." State v. Kelly, 201 N.J. 471, 492 (2010). This equitable doctrine is "used in criminal prosecutions to complement the constitutional protection against double jeopardy by protecting defendants against multiple prosecutions for different 'offenses' based on the same set of facts." State v. Gonzalez, 75 N.J. 181, 192 (1977).

A jury's inability to reach a unanimous verdict on any of the charges prosecuted in a criminal trial "results in a 'manifest necessity' for the trial court to declare a mistrial, and that re[-]prosecution for the same offense does not

violate the Fifth Amendment's double jeopardy clause." State v. Cruz, 171 N.J. 419, 425 (2002), (citing United States v. Perez, 22 U.S. 579, 580 (1824)). Stated more directly, "[a] mistrial is not a judgment or order in favor of any of the parties." State v. Hale, 127, N.J. Super. 407, 412 (App. Div. 1974).

Here, the trial judge held "[n]othing related to [a] weapon would be allowed in the subsequent trial based on the jury's verdict." The judge's ruling is based on a fundamental misunderstanding of the nature of the conspiracy charges in Indictment No. 19-01-0011. The State's theory of culpability on these charges is not dependent on whether defendant possessed a firearm. A jury may find defendant guilty of conspiracy to commit a crime with another person if the evidence shows defendant purposefully promoted or facilitated its commission, and either:

> (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> [N.J.S.A. 2C:5-2(a).]

As our Supreme Court explained in State v. Samuels: "the agreement to commit a specific crime is at the heart of a conspiracy charge. Such an

12

agreement is central to the purposes underlying the criminalization of the inchoate offense of conspiracy." 189 N.J. 236, 245 (2007). Thus, a jury may still find him guilty "under a theory of conspiratorial liability based solely on an agreement to commit a crime . . . ." State v. Roldan, 314 N.J. Super. 173, 189 (App. Div. 1998). Because defendant is charged with first degree robbery and second degree armed burglary, the State is not required to present evidence of any overt act. See N.J.S.A. 2C:5-2(d); N.J.S.A. 2C:15-1(b); N.J.S.A. 2C:18-2(b)(2).

The State may also prosecute defendant as an accomplice. Under our Criminal Code:

> [a] person is an accomplice of another person in the commission of an offense if:
>
> (1) With the purpose of promoting or facilitating the commission of the offense; he
>
> (a) Solicits such other person to commit it;
>
> (b) Aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (c) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so; or
>
> (2) His conduct is expressly declared by law to establish his complicity.
>
> [N.J.S.A. 2C:2-6(c).]

13

To be convicted of accomplice liability, an individual "must 'share the same intent required to be proven against the person who actually committed the act.'" In re State ex rel. A.D., 212 N.J. 200, 221 (2012) (quoting State v. Weeks, 107 N.J. 396, 405 (1987)). In addition to sharing the same intent as the principal, an accomplice must also "at least indirectly participate in the commission of the criminal act." State v. Whitaker, 200 N.J. 444, 459 (2009). "An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal." Id. at 458. However, "an accomplice who does not share the same intent or purpose as the principal may be guilty of a lesser or different crime than the principal." Ibid.

Of particular relevance here, "[a]n accomplice may be guilty of armed robbery even though he did not personally possess or use the firearm" during the robbery. State v. White, 98 N.J. 122, 130 (1984). Thus, defendant can be convicted as an accomplice if he "has committed the same crime as the individual who possessed or used the gun if the accomplice had the purpose to promote or facilitate that crime, namely robbery with the use of a firearm." Ibid.

If the jury finds defendant did not share the purpose to commit first degree armed robbery, he may still be convicted of second degree robbery. Whitaker, 200 N.J. at 459. "[I]f the State could prove that defendant, acting as an

accomplice, intended to aid or abet [the principal actor] in the theft and knew that [the principal actor] was armed with a gun, then defendant too would be guilty of armed robbery . . . ." Id. at 461-462.

The June 10, 2019 decision of the Criminal Part is reversed, the order dismissing the charges against defendant is vacated, and Indictment 19-01-0011 is reinstated. The case is remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5417-18